## 72205. CITY OF BUFORD et al. v. THOMAS et al.
(347 SE2d 713)

BEASLEY, Judge.

On September 30, 1983 shortly after 5:00 p.m., claimant's husband (employee) was found injured, having been run over by the tractor-pulled bushhog he was operating during the course of his employ-

ment. The seat belt of the tractor was unbuckled. Upon his hospitalization, a blood sample was taken from employee which reflected a blood alcohol level of .139. No one witnessed the accident, and employee could not remember what happened.

On July 29, 1984 employee, while hospitalized for a condition resulting from the bushhog accident which left his lower extremities unstable, apparently fell and was found at the foot of the bed. Employee died from injuries sustained in this incident, which again, no one witnessed. The present workers' compensation action followed.

The ALJ awarded claimant compensation and medical benefits, finding: 1) employee was "not intoxicated to the extent that his judgment was impaired or his words or conduct were visibly impaired and noticeably affected"; and 2) intoxication was not the proximate cause of the September 30 injury because employee "might have unbuckled his seat belt to stand up and look toward the bushhog, trying to clear it of a root, stump, or rock, and that during this activity, the tractor lurched forward, throwing him to the ground," the ALJ explaining that there was no evidence to overcome this "reasonable hypothesis." After a subsequent hearing, the ALJ awarded death benefits to claimant concluding, "a natural inference arising from all the evidence . . . points to [employee's] weakness from renal failure and lower extremity weakness, both conditions resulting as a consequence of or secondary to the bushhog injury . . . , as proximate contributing causes leading directly to [employee's] fall and subsequent death regardless of the reason for which he tried to get out of bed."

The State Board of Workers' Compensation adopted the findings and conclusions of the ALJ, and the superior court affirmed. We granted employer's application for discretionary appeal to review both the award of compensation and medical benefits and the award of death benefits.

1. Employer enumerates that OCGA § 34-9-17 bars all benefits to claimant, contending employee violated OCGA § 40-6-391 (a) (4), driving a moving vehicle while there is .12% or more by weight of alcohol in his blood, and also failed to use a safety appliance, the tractor's seat belt.

OCGA § 34-9-17 prohibits compensation for an injury or death "due to the employee's wilful misconduct, including [injury] due to intoxication or wilful failure or refusal to use a safety appliance or perform a duty required by statute . . ."

a) Intoxication. Employer points to the blood sample taken from employee after the bushhog incident which reflected a blood alcohol level of .139 and to testimony that at the time of the accident his blood alcohol level could actually have been as high as .22 as evidence of wilful misconduct. However, to deny compensation it is not sufficient for employer to show wilful misconduct; the employer also has

the burden of proving the employee's misconduct proximately caused his injury. OCGA § 34-9-17; *Communications, Inc. v. Cannon*, 174 Ga. App. 820 (331 SE2d 112) (1985).

Whether the employee has a .12% or higher blood alcohol level and whether this was the proximate cause of the injury were questions properly left to the State Board of Workers' Compensation: "A cardinal principle followed by this court in workmen's compensation cases is that neither this court nor a superior court has any authority to substitute itself as a fact finding body in lieu of the board of workmen's compensation. [Cit.] Thus a finding of fact by a director or administrative law judge of the State Board of Workmen's Compensation, when supported by any evidence, is conclusive and binding upon the courts . . . Moreover, upon appeal from an award of the State Board of Workmen's Compensation granting compensation, the evidence must be construed in a light most favorable to the party prevailing before the board. [Cit.]" *Lockhart v. Liberty Mut. Ins. Co.*, 141 Ga. App. 476, 478-479 (1) (233 SE2d 810) (1977). See also *Carroll v. Dan River Mills*, 169 Ga. App. 558, 562 (1) (313 SE2d 741) (1984).

There is evidence in the record that employee was not affected by his consumption of alcohol. His foreman stated that he saw employee about 4:30 p.m. on the day of the accident, that he came within three to five feet of him, and that "he walked just like anybody else . . . He talked with — I mean there was nothing wrong with him that I could see." When questioned about employee's sobriety at the time, the supervisor responded, "Well, he was just as well off as anybody . . . He was all right." Employee's ex-wife stated that she saw employee between 3:00 and 5:00 p.m. when he came into the store where she was working and purchased two 12-ounce beers. She observed him to be "walking all right" and noted that his voice was not slurred, that he was walking quickly and appeared to be in normal control of himself. A co-worker who last saw employee operating the bushhog at 4:45 p.m. stated that he did not detect any signs of drinking on the part of employee. Thus, contrary to employer's assertion, there was evidence to support the Board's finding that employee was not intoxicated to the extent that his judgment was impaired or his words or conduct were visibly impaired and noticeably affected.

Moreover, the employer failed to prove that employee's drinking proximately caused the accident. No one witnessed employee's fall, and employee could not recall what happened. "This left before the board an unexplained accident occurring during the course of employment. The law is well established that when an accident occurs in the course of employment otherwise unexplained, a presumption arises that it is compensable." *Lockhart*, supra at 480.

b) Safety appliance. Employer contends that the following evidence required a finding that employee wilfully failed to use a safety

appliance: The tractor had a seat belt; it was found unbuckled at the time employee was discovered after the accident; he had used the seat belt in the past; and, had he been wearing the seat belt at the time of the incident, he would not have fallen to the ground.

Even if we were to assume proximate causation, that employee would have escaped injury had he worn the seat belt, the above evidence does not require a finding of wilful failure to use the safety appliance: "[W]here conduct of the employee may be conscious and intentional violation of a known rule so as to constitute wilful misconduct, or may be merely inadvertent or an involuntary violation so as to constitute negligence only, the decision of the board on the point must be honored by this court." *North Ga. &c. School v. Boatwright*, 144 Ga. App. 66, 68 (240 SE2d 563) (1977). We will not interfere with the board's finding that the evidence "is insufficient to show that claimant willfully refused to use a safety device, i.e., the safety belt on the tractor."

2. Employer enumerates for the first time on appeal that claimant failed to meet the burden of proving the bushhog accident "arose out of" the course of employment. It is well settled that this court will not consider issues raised for the first time on appeal. *Ga. Retail Assn. v. Ga. Public Svc. Comm.*, 165 Ga. App. 208 (300 SE2d 544) (1983). Additionally, a review of the record reflects that employer conceded this element below and merely argued various exceptions to recovery, such as wilful misconduct.

3. Employer next challenges the award of death benefits, claiming that death was not caused by the bushhog accident. The lack of causation is based on two sources. First, employer asserts that employee failed to follow his surgeon's instructions not to get out of bed without assistance. Second, employer asserts (a) that the injury did not stem from a "quasi-course of employment activity" as it stemmed not from his hospitalization but from getting out of bed without assistance, and thus his simple negligence broke the causation chain, getting out of bed without assistance, and (b) even if the injury could be categorized as resulting from a "quasi-course of employment" activity, it is noncompensable because the chain of causation was broken by an intentional deliberate act in violation of medical instructions.

The evidence was undisputed that part of employee's surgical treatment was the post-operative care directed by the surgeon and carried out to a large extent by the nurses. This included employee's remaining in bed and not getting out without assistance. The employee was so instructed, repeatedly. At midnight on the night he died, the nurse who saw him hourly tucked him in, observed that he was alert and awake, put the bedrails up, placed a call bell wired to the nurse's station within his reach, and instructed him to use the bell to call a nurse for assistance if he wished to get out of bed. Employee

was coherent and indicated he understood the instructions. The I.V. unit was connected.

Around 4:00 a.m. the nurse observed the employee lying on the floor near the foot of his bed, with a gash on his forehead. The bedrails were still up, he had not summoned a nurse, and the I.V. was disconnected. The employee died as a result, and the surgeon testified that if the employee had followed the instructions, he would not have fallen, traumatized his head, and died.

The ALJ's findings in this regard, adopted by the Board, recognized that employee fell when "he tried to get out of bed," and that he died "as a result of this fall." He drew the inference from all of the evidence that the weakness from renal failure and the lower extremity weakness, both caused by the bushhog injury, were "proximate contributing causes leading directly to claimant's fall and subsequent death."

a) Failure to follow doctor's orders. In order for death to be compensable, it must result proximately from the accident which arose out of and in the course of employment. *Johnson v. Fireman's Fund Indem. Co.*, 79 Ga. App. 187 (53 SE2d 204) (1949); *Liberty Mut. Ins. Co. v. Harden*, 85 Ga. App. 830 (70 SE2d 89) (1952).

The claimant must always carry the burden of showing that death resulted from an accident arising out of and in the course of the employment. *Hardware Mut. Cas. Co. v. King*, 104 Ga. App. 252, 254 (1) (121 SE2d 336) (1961). In some instances, the employer must, as a matter of affirmative defense, show that some intervening agency was the cause of the employee's death rather than the employment-related injury. *Royal Indem. Co. v. Land*, 45 Ga. App. 293, 297 (164 SE 492) (1932); *Zurich Ins. Co. v. Hightower*, 113 Ga. App. 503, 505 (148 SE2d 464) (1966).

Here, employer relies first on OCGA § 34-9-204, which provides that no compensation for death shall be payable "if his death is caused by . . . a neglect to follow any reasonable surgical treatment by a competent surgeon." This section provides an affirmative defense. The problem with reliance on this provision is that the factfinders did not find neglect in employee's getting out of bed, and the evidence before the factfinders did not demand as a matter of law the conclusion that employee acted negligently when he tried to get out of bed despite the earlier instructions not to do so. What prompted his action is totally unknown.

b) Break in causal chain. Employer argues that employee's getting out of bed, which precipitated the fatal fall, constituted an independent intervening cause of death. Larson's Workmen's Compensation Law, Vol. 1, Sec. 13.11 (1985), is relied upon by the employer for the proposition that different causation rules determine how far from the primary injury the range of compensable consequences is carried.

As to the subsequent injury, the employee's own conduct in pursuing "quasi-course of employment" activities (such as obtaining medical treatment for employment-sustained injuries) would break the chain of causation if the conduct is intentional conduct which could be regarded as expressly or impliedly prohibited by the employer. On the other hand, when the subsequent injury does not even arise out of a "quasi-course of employment" activity, the chain is broken by negligent as well as intentional conduct. (See subsection (d) of Sec. 13.11.)

Thus, says the employer, because the fatal injury resulted from getting out of bed which was *not* a "quasi-course of employment" activity, employee's negligence rendered the injury noncompensable. Further, even if the injury-causing activity was regarded as a "quasi-course of employment" activity, it says, the act was an intentional act in violation of express medical orders (presumably therefore impliedly prohibited by the employer) and noncompensable under this analysis as well.

Georgia recognizes "super-added" injuries in calculating total disability compensation. See *Noles v. Aragon Mills*, 116 Ga. App. 560 (158 SE2d 261) (1967), where the court affirmed an award for total incapacity which resulted from skin grafts to employee's left leg where the right leg was "surgical[ly] wound[ed]" to secure the skin used. See also *Clark v. Liberty Mut. Ins. Co.*, 108 Ga. App. 806, 807 (1) (134 SE2d 534) (1963), and *Fieldcrest Mills v. Richard*, 141 Ga. App. 702, 703 (1) (234 SE2d 345) (1977), which discuss, respectively, super-added injuries resulting "in consequence of" and "as a consequence of" the initial injury. These cases, however, provide little guidance for what may be categorized as a super-added injury.

Even if we were to adopt Larson's approach, as urged by appellant employer, we would still not reach the conclusion that the trial court erred in affirming the award of death benefits because there is a total lack of evidence of negligence or of intentional violation, on the part of the employee in his getting out of bed.

The ALJ and Board concluded that getting out of bed was not an independent intervening cause precluding compensability for the resulting death. Because the findings of fact upon which the legal conclusion was based are supported by the evidence, they are conclusive upon us as they were upon the trial court. *Carroll*, supra at 562.

Moreover, the ALJ's and Board's finding that the renal failure and lower extremity weakness which were consequences of the bushhog accident were also proximate contributing causes of the death following the fall is supported by evidence. The surgeon testified that except for the employee's lower extremity instability, he would have been stable enough on his feet not to have fallen when he tried to get out of bed. He also testified that without the pre-existing renal failure and other complications, the employee "very possibly" would have

tolerated the head injury. *B. P. O. Elks Lodge No. 230 v. Foster*, 91 Ga. App. 696 (86 SE2d 725) (1955).

*Judgment affirmed. Deen, P. J., and Benham, J., concur.*

DECIDED JULY 15, 1986.

*Stephen A. Friedman, Charles B. Rice*, for appellants.

*G. Gibson Dean II*, for appellees.