## 77609. JACKSON v. EASTERS et al.
### (379 SE2d 610)

BEASLEY, Judge.

Jackson sued Easters and Coverstitch, Inc., for breach of contract and quantum meruit as a result of an unsuccessful business venture. Jackson appeals from judgment on the jury's verdict in favor of defendants.

Three paragraphs of the complaint alleged that in June of 1985 "Plaintiff entered into an agreement with the Defendant, C. C. Easters, Steve Wilkins, and Jack Chambliss, whereby for valuable consideration said individuals were to acquire, own, operate and manage a cut and sew contract operation whereby said individuals would be operating a textile business and selling its production . . . . As per the terms of this agreement, Plaintiff, . . . Wilkins and . . . Chambliss were to have a 24 percent undivided interest and the Defendant, C. C. Easters, was to have a 28 percent interest. . . . Pursuant to said agreement, said individuals agreed to incorporate and name their corporation 'Coverstitch, Inc.,' which corporation was ultimately completed by the Defendant, C. C. Easters, on or about June 11, 1986."

Defendants, in their answer, admitted these three paragraphs. No pretrial order was entered. The court, in its charge to the jury, read the allegations and pointed out what facts were admitted by defendants. See generally *Behar v. Aero Med Intl.*, 185 Ga. App. 845, 847 (1) (366 SE2d 223) (1988).

Viewed so as to support the verdict, the evidence showed that Jackson and Easters originally spoke at a gospel sing about going into the business of making neckties. Jackson then located some used equipment and a vacant textile plant in Warrenton. Easters purchased the building. At that point, Jackson and Easters decided that if equipment could be obtained at the right price, they would begin a contract cut and sew operation, not just a necktie manufacturing operation. Easters bought the equipment and interested Wilkins and Chambliss in the venture. All four went to look at the Warrenton building in June 1985, after which they discussed the percentages of ownership. Jackson was to have his "interest" when the business was incorporated and the shares issued. He was not to put up any money but was to use his knowledge and skill to start the business. Jackson admitted that none of the men was to get any "reimbursements, like, you know, any pay or salary or anything like that until the company became profitable."

He acknowledged that there was to be a "writing down the road

at some point in time where these things were to be more specifically defined and set out," when the business was incorporated. Easters testified that at the point when the business became profitable, he and Jackson were to discuss what Jackson's salary would be and Jackson would get his shares when he had worked long enough to have earned the 24 percent interest.

Based on the admissions which arose from the answer to the complaint's allegations, Jackson moved for directed verdict, specifically and solely asking "that the jury, at the appropriate time, be instructed that there is, in fact, an admitted agreement and they would have to show a breach . . . on the plaintiff's part [in order to prevent his recovery] as opposed to an issue of no agreement or an agreement."

1. The first two enumerations urge error in the court's denial of the motion for directed verdict and for j.n.o.v. based on it.

"A contract is an agreement between two or more parties for the doing or not doing of some specified thing." OCGA § 13-1-1.

The party asserting the existence of a contract has the burden of proving its existence and its terms. *Casper v. Harrison Hatchery*, 172 Ga. App. 35 (321 SE2d 785) (1984); *Carter v. Kim*, 157 Ga. App. 418 (277 SE2d 776) (1981). The requisites of an explicit contract are a meeting of the minds of the parties, mutuality, and the clear expression of the terms of the agreement. *Bagwell-Hughes v. McConnell*, 224 Ga. 659, 661 (164 SE2d 229) (1968); *Casper*, supra at 36.

Assuming without deciding that the allegations of the complaint as admitted provide the basis for the court to find *in judicio* admissions, see OCGA § 24-3-30; *Scott v. Jefferson*, 174 Ga. App. 651, 652 (1) (331 SE2d 1) (1985), this would not have entitled Jackson to a ruling that as a matter of law there was a "valid contract."

All that the complaint alleged and all that was admitted was at most only a portion of the matters at issue and provided for actions to be done in the future. While the admitted matter alludes to an agreement, there was no indication that the facts admitted constituted all of the terms. The testimony of Jackson and Easters indicated that this was not so and that there was disagreement as to the additional terms.

The most that can be said of the admissions is that they represented the commencement of negotiations on a contract which Jackson acknowledges was to be finalized and reduced to writing in the future.

" 'If there was in fact any essential part of the contract upon which the minds of the parties had not met, or upon which there was not an agreement, even though the negotiations evidenced a complete willingness, or even an announced determination, to agree in the future upon such issues as might subsequently arise, it must follow that

a valid and binding contract was not made as of the earlier date.' [Cit.] 'Unless all the terms and conditions are agreed on, and nothing is left to further negotiations, a contract to enter into a contract in the future is of no effect.' [Cit.] 'An agreement to reach an agreement is a contradiction in terms and imposes no obligation on the parties thereto.' [Cit.]" *Wells v. H. W. Lay & Co.*, 78 Ga. App. 364, 367 (1) (50 SE2d 755) (1948); *Bagwell-Hughes*, supra; *Casper*, supra; *Hartrampf v. C & S &c.*, 157 Ga. App. 879, 881 (1) (278 SE2d 750) (1981).

The court properly denied Jackson's motion. We note also that, as phrased, the motion was not for the direction of a verdict in favor of Jackson, OCGA § 9-11-50, in that it sought only to have the jury instructed that there was a contract and not that Jackson was entitled to recover thereon. Likewise, the denial of the motion for j.n.o.v. was not error.

2. In his third enumeration Jackson claims error in the trial court's denial of his motion for new trial on the ground that the court failed to charge, without a request, OCGA § 13-3-4, concerning conditions precedent and subsequent in contracts. At the conclusion of the court's charge, Jackson excepted only to the failure of the court to give one of its submitted requests.

"OCGA § 5-5-24 prohibits a party from complaining of the giving or failing to give jury instructions unless it objects before the jury returns its verdict, except where there has been a substantial error in the charge which was harmful as a matter of law." *Dept. of Transp. v. Old Nat. Inn*, 179 Ga. App. 158, 162 (5) (345 SE2d 853) (1986). Because some of the specifics of the agreement were left to be resolved, as discussed supra, OCGA § 13-3-4 was not relevant; so the failure to give it was not harmful as a matter of law.

3. The final enumeration is the court's direction of a verdict against Jackson's claim for punitive damages. The contention is that he was entitled to have punitive damages considered by the jury as a proper element of recovery in a wrongful repossession claim. This is the first mention of any such wrongful repossession claim, and errors presented for the first time on appeal will not be considered. *City of Buford v. Thomas*, 179 Ga. App. 769, 772 (2) (347 SE2d 713) (1986).

*Judgment affirmed. Banke, P. J., and Birdsong, J., concur.*

DECIDED MARCH 2, 1989 —
REHEARING DENIED MARCH 13, 1989 —

*William R. McCracken*, for appellant.
*William M. Wheeler*, for appellees.