A93A2487. WALLACE et al. v. TRIAD SYSTEMS FINANCIAL
CORPORATION.
(442 SE2d 476)

SMITH, Judge.

Triad Systems Financial Corporation f/k/a TSC Leasing Corporation (hereinafter "TSC") brought suit against sole proprietorship Fast Radiator & Auto Parts and its owner, Larry Jack Wallace (hereinafter collectively "Wallace"), for monies allegedly owed pursuant to an equipment lease agreement. The trial court granted TSC's motion for summary judgment, and Wallace appeals.

TSC is a wholly owned subsidiary of Triad Systems Corporation ("Triad"). Triad is a California corporation engaged in the manufacture, sale, licensing and maintenance of computer hardware and software. TSC leases equipment originating from its corporate parent and from other vendors. According to TSC, agents of its corporate parent are not likewise agents of TSC, even though Triad salespersons typically emphasized and arranged financing through TSC.

In July 1990, Triad representative Jeff Nash approached Wallace about purchasing a Triad computer known as a "Laser Cat." Its function is to catalog auto parts. On July 19, Wallace agreed to acquire that system by entering into a system purchase support and licensing agreement with Triad. Wallace elected to fulfill its obligation to Triad by leasing the equipment through TSC. Toward that end Wallace signed a "master lease" and "lease schedule" on July 19, 1990 and August 6, 1990, respectively. It is uncontroverted, and is in fact TSC's position, that a lease schedule alone would not constitute the entire contract between the parties.

Thereafter another sales agent of Triad, David Sanders, approached Wallace concerning the possible purchase of a more comprehensive Triad system. Sanders and Wallace met on two occasions toward this end. On March 28, 1991, Wallace executed a system purchase support and license agreement with Triad for the more comprehensive Triad system. Just as he did following the first purchase agreement he entered with Triad, Wallace subsequently signed a TSC "lease schedule." However, unlike the first transaction, no separate and distinct TSC "master lease" was executed with respect to the second transaction. The lease schedule executed by Wallace provides that the terms and conditions of the lease include those "specified herein and in that certain master lease agreement dated 3/28, 1991 between lessor and lessee by this reference incorporated herein." It is uncontroverted that there was no master lease agreement signed on

that date.

Mutual assent to a contract's terms is essential to its validity, OCGA § 13-3-1, and "until each has assented to all the terms, there is no binding contract." OCGA § 13-3-2.[1] It is TSC's position that the contract between the parties now in dispute consists of the lease schedule signed on March 28, 1991 and the "master lease" Wallace signed in connection with the "Laser Cat" transaction on July 19, 1990, despite the fact that the lease schedule refers unequivocally to "that certain master lease agreement dated 3/28, 1991."

TSC first argues that the master lease signed on July 19, 1990 was intended to apply to any transaction that the parties might enter at any time thereafter, including the transaction of March 28, 1991, regardless of whether the lease schedule specifically referenced it. We need not address this novel theory since the master lease TSC relies upon simply does not manifest such an intent. Rather, it provides that "lessee hereby agrees to lease from lessor, subject to the terms of this master lease agreement . . . the personal property . . . described in any lease schedule . . . executed by the parties hereto and incorporating the terms of this master lease *by reference therein*." (Emphasis supplied.) Clearly, the master lease to which TSC refers manifests an intent contrary to that described in TSC's initial position. Without "reference therein," future contracts between the parties would not incorporate the terms of that master lease.

TSC next argues that the lease schedule executed on March 28, 1991 reflects an express intention that it be integrated with "the" master lease and that the reference to a master lease dated March 28, 1991 was merely an "obvious mistake." However, Wallace has filed an affidavit stating that at some point he was presented with a master lease to sign in connection with the present transaction, and that he refused to do so. It would appear therefore that, at a minimum, an issue of fact remains whether a completed lease contract exists between Wallace and TSC as the means chosen to finance the Triad system. If not, it is irrelevant whether Wallace agreed to those terms which are embodied in the lease schedule; until Wallace agreed to all of the terms making up the agreement, which were contained in more than one writing by TSC's own express design, no binding contract existed between the parties. OCGA § 13-3-2.

TSC also attempts to label the incorrect date on the lease schedule an "ambiguity." It reasons that since only one master lease was ever executed between the parties, that document must be the one referenced in the subsequent lease schedule for the more elaborate Triad system. This merely begs the question of whether the lease

---

[1] For leases formed on or after July 1, 1993, see OCGA § 11-2A-204.

schedule refers to a "master lease" that was in fact executed at any time.

It would be TSC's burden at trial to prove by a preponderance of the evidence the existence and terms of the contract on which it relies for recovery. *Jackson v. Easters*, 190 Ga. App. 713 (379 SE2d 610) (1989). It is axiomatic that to warrant the grant of summary judgment, TSC must meet the heavier burden of showing that no genuine issue of material fact remains on these issues for jury determination. See, e.g., *Pollard v. Faris*, 159 Ga. App. 363 (1) (283 SE2d 338) (1981). Since that burden has not been met, the trial court erred in granting TSC's motion for summary judgment. *Re/Max Specialists v. Kosakai*, 202 Ga. App. 871 (415 SE2d 698) (1992).

*Judgment reversed. Beasley, P. J., and Cooper, J., concur.*

DECIDED MARCH 17, 1994 —
RECONSIDERATION DENIED MARCH 30, 1994 — 

*Foster & Foster, Larry A. Foster*, for appellants.
*H. Michael Dever*, for appellee.