In re William W. HOPSON, Debtor.

Paige L. HOPSON, Plaintiff,

v.

William W. HOPSON, Defendant.

Bankruptcy No. A92–62237–JB.
Adversary No. 96–6675.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Feb. 21, 1997.

J.D. Humphries, III, Varner, Stephens, Humphries & White, Atlanta, GA, for debtor/defendant.

George M. Geeslin, Atlanta, GA, for plaintiff.

### ORDER

JOYCE BIHARY, Bankruptcy Judge.

This matter is before the Court on the defendant-debtor's motion to enforce a settlement agreement and dismiss this adversary proceeding. This adversary proceeding was brought by debtor's ex-wife, Paige L. Hopson ("Mrs.Hopson"), requesting a determination that a debt incurred by Debtor William W. Hopson ("Mr. Hopson" or "the debtor") as part of a divorce settlement is not dischargeable under 11 U.S.C. § 523(a)(5). The debt at issue is a promissory note for $85,000.00.

The Hopsons were married in 1966 and divorced in 1990. The Superior Court of Fulton County, Georgia, issued a Final Decree and Judgment of Divorce on November 27, 1990, which incorporated the parties' Alimony and Property Settlement Agreement ("the Agreement"). Paragraph 11(c) of that Agreement provided for a promissory note requiring debtor to pay to Mrs. Hopson the sum of $85,000.00 in three installments. The first payment was in the amount of $35,000.00 and was to come due on April 1, 1996; the second installment of $35,000.00 was due on April 1, 1997; and the balance of the note ($15,000.00) was due on April 1, 1998. The Agreement also provided that debtor was to pay Mrs. Hopson alimony for a period of sixty-six (66) months, such that the alimony payments were to end in March, 1996, the month before the first installment on the note came due.

Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on February 5, 1992, Case No. A92–62237–JB. The promissory note to Mrs. Hopson was listed on Schedule F of unsecured creditors and was denominated a "property settlement" in the amount of $85,000.00. Mr. Hopson received a discharge on May 27, 1992, and the case was closed on June 15, 1992. Neither party sought a determination as to the dischargeability of the debt under § 523(a)(5). The federal and state courts have concurrent jurisdiction over claims under § 523(a)(5), and neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure contain a deadline for filing complaints to determine dischargeability under § 523(a)(5).

In April 1996, debtor did not make the first note payment of $35,000.00, and Mrs. Hopson consulted with an attorney, Robert Wellon. Mr. Wellon advised Mrs. Hopson of his belief that the debt was in the nature of "support and maintenance" and would not have been discharged by Mr. Hopson's bankruptcy. On August 21, 1996, Mr. Wellon filed an action in the Superior Court of Fulton County to hold Mr. Hopson in contempt for refusing to make the first payment under the $85,000.00 note. The contempt matter was set for a hearing on September 6, 1996, in Superior Court. In September, Mr. Wellon met with debtor and debtor's counsel, J.D. Humphries, III, and the parties discussed the dispute, including whether the debt was dischargeable.

On September 18, 1996, Mr. Humphries removed the Fulton County contempt action to the Bankruptcy Court, filed a motion to re-open the old bankruptcy case, Case No. A92–62237–JB, and filed a motion to hold Mrs. Hopson and her attorney in civil contempt for violating the discharge injunction entered in debtor's bankruptcy by filing the contempt motion in Fulton County Superior Court. Neither the debtor's contempt motion nor Mrs. Hopson's contempt motion sought a determination of the dischargeability of the debt under § 523(a)(5). The removed Fulton County contempt action was assigned Adversary Proceeding No. 96–6554. Debtor's motion to re-open and the cross-motions for contempt were set for hearing on October 23, 1996.

Mr. Wellon encouraged Mrs. Hopson to hire an attorney experienced in bankruptcy matters. Due to the cost of such representa-

tion and other factors, Mrs. Hopson decided not to hire bankruptcy counsel at that time. Concerned about her financial situation, on October 18, 1996, she called Mr. Wellon and left a voice mail message "to dismiss the case." Mrs. Hopson states in her affidavit that she was "apprehensive over no income, and wanted to be able to get some money first." (Paige L. Hopson Aff. ¶ 9). She did not understand that if the contempt action were dismissed, she could not again pursue the debt. Mrs. Hopson believed that she could hire bankruptcy counsel when she was more financially stable and bring a dischargeability action at that time.

On Friday, October 18, 1996, Mr. Wellon transmitted a letter by facsimile to Mr. Humphries, in which Mr. Wellon states,

I have had discussions with Paige on the best available course of action she would like to pursue regarding the future of this litigation. She has authorized me to file, in order to resolve all issues in the Superior Court, Bankruptcy Court, and any other court we can find to litigate, a joint dismissal of the pending actions so as to conclude the matter. I suggest this should be done prior to our scheduled inquisition before Judge Bihary next week.

Mr. Hopson and Mr. Humphries are law partners. Mr. Humphries was out of the office on October 18, 1996, and Mr. Humphries' secretary brought the letter to debtor. Debtor then notified this Court telephonically that the parties had settled, requested that the motions be removed from the October 23, 1996 calendar, and stated that an order and stipulation of dismissal would be forthcoming. The motions were removed from the calendar.

On Monday, October 21, 1996, Mr. Humphries called Mr. Wellon and left a voice mail message to the effect that the "offer" was accepted, the hearing had been canceled, and Mr. Humphries would be glad to prepare, or have Mr. Wellon prepare, dismissals as soon as practicable. Also on Monday, October 21, 1996, Mrs. Hopson contacted Mr. Wellon and informed him that she had decided to hire bankruptcy counsel and pursue the litigation. Mr. Wellon attempted to reach Mr. Humphries on October 21, 1996 and left a message that Mrs. Hopson now desired to move forward in the litigation. (Wellon Aff. ¶ 3(h)). On Tuesday, October 22,1996, Mr. Wellon spoke to Mr. Humphries and stated that Mrs. Hopson had changed her mind, renounced the settlement, and wished to retain other or additional counsel and proceed. (Humphries Aff. ¶ 15). During that conversation, Mr. Humphries informed Mr. Wellon of his belief that the matter had been settled, that the Court had been advised that the parties had settled, and that the motions had been removed from the calendar.

On October 22, 1996, Mr. Humphries notified the Court by telephone that a voluntary dismissal would not be forthcoming, and that Mr. and Mrs. Hopson disagreed as to whether the case was settled. Mr. Humphries wrote the Court a letter dated October 23, 1996, asking that a hearing on the motions be reset, and the motion to re-open and the contempt motions were set for hearing on November 18, 1996.

Mrs. Hopson hired bankruptcy counsel, George M. Geeslin, and the instant dischargeability proceeding under § 523(a)(5) of the Bankruptcy Code was filed on November 13, 1996. Mrs. Hopson contends that the obligation is in the nature of support or maintenance within the meaning of § 523(a)(5) and that the debt was not covered by debtor's bankruptcy discharge.

Following the hearing on November 18, 1996, the Court entered an Order dismissing both motions for contempt, and granting debtor's motion to re-open bankruptcy case, Case No. A92–62237–JB, to permit the Court (1) to consider whether a settlement had occurred, precluding a claim by Mrs. Hopson that the $85,000.00 note is not dischargeable under 11 U.S.C. § 523(a)(5), and (2) if a settlement does not preclude such litigation, whether the obligation is dischargeable under § 523(a)(5). Debtor filed a motion to enforce the settlement agreement by dismissing this adversary proceeding. After carefully reviewing the motion, plaintiff's response, and the affidavits submitted, the Court concludes that the facts support a finding that the parties settled the contempt motions, but the settlement was not clearly

intended to include a settlement of Mrs. Hopson's claim under § 523(a)(5).

The construction of settlement contracts is governed by the state law applicable to contracts in general. *Blum v. Morgan Guar. Trust Co.*, 709 F.2d 1463, 1467 (11th Cir.1983). Here, Georgia law governs both whether there was a settlement agreement and the construction of any alleged settlement agreement. *Ford v. Citizens and S. Nat'l Bank*, 928 F.2d 1118, 1120 (11th Cir. 1991). The courts in Georgia recognize that "a legally effective compromise of a dispute is binding on the parties, that the law favors compromises, and that a promise made in extinguishment of a doubtful claim is sufficient to support a valid contract." *Dover Realty, Inc. v. Butts County Board of Tax Assessors*, 202 Ga.App. 787, 787–88, 415 S.E.2d 666, 667 (1992). However, for such an agreement to be binding on the parties, the settlement agreement must be definite, certain and unambiguous. It should be full and complete and understood by all litigants concerned. *Cross v. Cook*, 147 Ga.App. 695, 696, 250 S.E.2d 28, 29 (1978).

If the existence or terms of a settlement agreement are disputed, then the agreement must be in writing. *See* O.C.G.A. § 15–19–5; *Brumbelow v. Northern Propane Gas Co.*, 251 Ga. 674, 676, 308 S.E.2d 544, 547 (1983). In the absence of a formal writing signed by the parties, "letters or documents prepared by attorneys which memorialize the terms of the agreement will suffice." *Id.* Such correspondence must contain all of the material terms of the agreement, as a settlement does not exist until all of the essential terms have been agreed to. *Moore v. Farmer's Bank of Union Point*, 184 Ga.App. 86, 87, 360 S.E.2d 640, 641 (1987) (letters from counsel conflicted as to material terms). If the opposite party has relied to his detriment on the agreement, "[T]he absence of a writing will not render the agreement unenforceable." *Brumbelow*, 251 Ga. at 676, 308 S.E.2d at 547.

Finally, Georgia law requires that an agreement alleged to be in settlement and compromise must meet the same requisites of formation and enforceability as any other contract. *Blum,* 709 F.2d at 1467. Consideration is essential to have an enforceable contract, and the party asserting the existence of a contract has the burden of proving its existence and terms. O.C.G.A. § 13–3–40(a); *Jackson v. Easters*, 190 Ga. App. 713, 714, 379 S.E.2d 610, 611 (1989).

Mrs. Hopson disputes the existence of any settlement agreement. There is no formal writing signed by the parties. However, Mr. Wellon wrote a letter to Mr. Humphries on October 18, 1996, in which Mr. Wellon states that he is authorized to file a joint dismissal of the pending actions. The pending actions include the removed contempt action filed by Mrs. Hopson (and assigned Adversary Proceeding No. 96–6554) and the contempt motion filed by Mr. Hopson. Mr. Wellon states that he is authorized to file a joint dismissal in order to "resolve all issues in the Superior Court, Bankruptcy Court, and any other court we can find to litigate." Contrary to Mrs. Hopson's contention, this was an offer to settle the pending contempt motions by execution of a joint dismissal. This offer was accepted by Mr. Humphries on October 21, 1996. Mr. Humphries left a voice mail message on October 21, 1996, that accepted the offer. Mr. Wellon received this message before he left a message with Mr. Humphries that Mrs. Hopson had changed her mind.

Mr. Wellon tried to revoke his offer in his telephone call of October 22, 1996, to Mr. Humphries, when Mr. Wellon told Mr. Humphries that Mrs. Hopson had changed her mind and was renouncing the settlement. However, the offer was accepted before it was revoked. "As a matter of course, the offeror's power of revocation ceases at the instant that an acceptance by the offeree becomes effective." 1 Joseph M. Perillo, *Corbin on Contracts* § 2.18 (Rev.ed.1993). The general rule is that an acceptance is "effective when it is *communicated*" to the offeror, but that revocation is "effective when *received* by the offeree." John D. Calamari and Joseph M. Perillo, *The Law of Contracts* §§ 2–23(c), 2–25(a) (2d ed.1977) (emphasis added). Thus, Mrs. Hopson's position that she can renounce her settlement of the contempt motions is without merit. Con-

trary to Mrs. Hopson's argument, Mr. Wellon's letter had some meaning. One lawyer wrote another lawyer saying he was authorized to file a joint dismissal of pending actions. This offer was accepted. Counsel's argument that his client can change her mind and renounce a settlement is contrary to the policies behind the considerable body of law regarding the enforcement of settlements. While the Court dismissed these contempt motions following the hearing of November 18, 1996, there is no apparent reason to keep Adversary Proceeding No. 96–6554 open. The parties should file a joint dismissal of their contempt motions and Adversary Proceeding No. 96–6554 and are **ORDERED** to do so within ten (10) days of the entry of this Order.

The more difficult question is whether Mr. Wellon's October 18, 1996 letter was an offer to resolve anything more than the pending contempt actions. The Court has carefully reviewed the contempt motions and finds that neither party in its contempt motion asks the Court to make a determination of the dischargeability of the $85,000.00 note claim. While each party implicitly assumed in his or her contempt motion that the debt was dischargeable or non-dischargeable, neither contempt motion squarely placed in issue the claim under § 523(a)(5). Mr. Wellon's petition for contempt filed in Superior Court made no reference to the bankruptcy.

He simply sought to hold Mr. Hopson in contempt for failing to make the payment due under the note. Mr. Hopson's contempt motion simply argued that the contempt action in Fulton County violated the discharge injunction under § 524 of the Bankruptcy Code. While Mr. Wellon's letter refers to "concluding the matter" and "resolving all issues in any court they can find in which to litigate," the letter is not definite, certain and unambiguous in its release of any unfiled future claim by Mrs. Hopson under § 523(a)(5). Furthermore, the letter does not refer to a joint dismissal with prejudice. Thus, while the Court will enforce the settlement agreement insofar as it precludes any litigation on the filed contempt motions and Adversary Proceeding No. 96–6554, the Court cannot find that the parties settled an unfiled claim under § 523(a)(5).

In accordance with the above reasoning, counsel are ordered to file a joint dismissal of Adversary Proceeding No. 96–6554 within ten (10) days and defendant's motion to dismiss Adversary Proceeding No. 96–6675 is hereby **DENIED.**