## A03A1638. OVERTON APPAREL, INC. et al. v. RUSSELL CORPORATION et al.
### (590 SE2d 260)

BARNES, Judge.

Overton Apparel and L&H of California, plaintiffs below (collectively "Overton"), appeal the trial court's grant of summary judgment to the Russell Corporation and Cross Creek Apparel (collectively "Russell") on Overton's complaint for breach of contract and quantum meruit. Russell is an apparel company specializing in sportswear. Overton Apparel and L&H of California are involved in sportswear manufacturing and sales.

The complaint alleged that Overton and Russell reached an agreement under which Overton would be granted an exclusive license for five years, with an option to extend, to market the Cross Creek brand by Russell and in return Overton would pay royalties to Russell as specified by the agreement. The complaint also alleged that Overton and Russell agreed that Overton would represent Cross Creek at a major trade show called MAGIC which would be held in Las Vegas, Nevada. According to the complaint, Overton represented Cross Creek at MAGIC to the benefit of Cross Creek and to the detriment to its own brands.

The complaint alleges that after the trade show, Russell stalled signing the agreement, attempted to renegotiate it, and then refused to comply with the licensing agreement. As a result, Overton was denied the past and future profits it was entitled to under the licensing agreement. In the alternative, Overton asserted that it was entitled to be paid the reasonable value of the services it rendered under the theory of quantum meruit. Overton also sought attorney fees and costs because Russell was stubbornly litigious and acted in bad faith.

Russell answered denying liability and, after discovery, moved for summary judgment. Russell contended that no legally binding agreement existed between the parties, and that Overton's claims for lost future profits were not permitted under our law. Russell asserted that Overton understood that no binding agreement would exist until

the parties reached a final and definite license agreement, and that Overton had insisted on this provision.

The trial court found that the case concerned an alleged licensing agreement between Russell and Overton concerning the Cross Creek Apparel line, and that no written contract existed which was signed by the parties. The court found that, at best, there was a non-binding letter of intent, proposed by the plaintiffs, which was never signed, and which contained the statement that the letter was not binding. The court further found that the license agreement was required to be in writing because it could not be performed within one year, OCGA § 13-5-30 (5), and that no evidence of part performance existed that would take the agreement from under the Statute of Frauds because the plaintiffs' statement said that they would attend the MAGIC show with the understanding that "if we are unable to come to a final agreement that we will cancel goods or offer with an alternative label. There will be no funds transferred in either direction." The trial court also found that Overton's quantum meruit claims were not supported by the evidence because nothing showed that it had performed under the alleged contract.

Overton alleges that the trial court erred by granting summary judgment because (a) a writing exists that takes the agreement out of the Statute of Frauds, (b) Russell Corporation does not deny there was an agreement, and (c) sufficient part performance existed to take the agreement out of the Statute of Frauds. They also contend that the terms of the agreement were clearly stated and supported by the evidence, and the damages are certain, flow from the breach, and are capable of being proven at trial. They further contend that, in any event, the trial court should not have granted summary judgment on their claim for quantum meruit. Russell contends, however, that this is a case of disappointed expectations, and that at most the parties had merely agreed to reach an agreement and that such an agreement is unenforceable. We agree and affirm.

1. The standards applicable to motions for summary judgment are announced in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). When a trial court rules on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843) (1988). On appeal of the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence. *Desai v. Silver Dollar City*, 229 Ga. App. 160, 163 (1) (493 SE2d 540) (1997). Further, contract disputes are particularly well suited for adjudication by summary judgment because construction of contracts is ordinarily a matter of law for the

court. *Burns v. Reves*, 217 Ga. App. 316, 318 (1) (457 SE2d 178) (1995).

2. "A contract is an agreement between two or more parties for the doing or not doing of some specified thing," OCGA § 13-1-1, and the party asserting the existence of a contract has the burden of proving its existence and its terms. *Jackson v. Easters*, 190 Ga. App. 713, 714 (1) (379 SE2d 610) (1989). Therefore, Overton had the burden of establishing the existence of the agreement that it wished to rely upon.

Although Overton claims that an agreement was reached, the evidence, including the plain terms of the agreement Overton claims was reached, show that even if this were true, the agreement was not a binding contract. It is important to understand that when Overton alleges that an agreement was reached, it is not asserting that a final binding license agreement was reached. Instead, Overton contends that the agreement on the letter of intent was reached. In his deposition, Mr. Norwood, the president of Overton, testified:

Q: Is it your testimony that it was in that telephone conversation [on the afternoon of August 23] that you and Mr. Hoyle reached a, quote, final agreement?
A: Final agreement?
Q: Yes, sir.
A: No. What we agreed to were the terms of the letter of intent.
Q: So your testimony is that in the phone conversation on 4:30 or 5:00 in the afternoon, you agreed on the terms of the letter of intent?
A: That's correct, and all the points that were part of that which is the text of a future agreement.

Contrary to the statements in the affidavit of Norwood, that Russell's representative told him that they had an oral, final agreement, the deposition evidence, and particularly the draft letter of intent submitted the day after Overton alleges the agreement was reached, shows that no such agreement was reached. More significantly, the evidence shows that Overton understood that no agreement would be reached until the entire agreement had been approved by the parties, because Overton insisted on this provision.

In relevant part, the letter of intent states:

This letter is to serve as a non-binding letter of intent between Russell Corporation . . . and Cross Creek Apparel, Inc. . . . and L&H of California. . . . This letter states the preliminary intentions of the parties with respect to negoti-

ating a definite license and purchase of assets agreement ("Agreement") relating to certain trademarks and other Cross Creek assets owned by Russell. This proposal supersedes any other previous written or oral communications.

. . .

5. MAGIC and PGA Show Sales.

L&H and its sales representatives shall have the right to book new Cross Creek orders from its own inventory at the August MAGIC and September PGA shows ("New Orders"). In the event that the parties fail to finalize a definite Agreement, then L&H shall still have a right to fill the New Orders with another customer approved Label, or cancel the orders. In the event that the parties fail to finalize a definite Agreement, L&H is not obligated to pay Russell the five percent (5%) license fee on sales of the New Orders.

. . .

6. Timetable to Complete Transactions.

It is the intention of the parties to execute a final and definite Agreement to complete the transactions contemplated in this letter on or before Monday October 1, 2001 at 5:00 P. M. EST.

. . .

9. Expenses.

L&H and Russell shall pay their own costs and expenses incurred by them in negotiating and preparing the Agreement and in closing and carrying out the transactions contemplated by this letter of intent and the Agreement.

. . .

16. Non-binding Nature of Letter of Intent.

Except as expressly stated in paragraph 17 [not relevant to this appeal], this letter of intent is not intended to constitute a binding agreement but rather to serve as the basis for negotiating and drafting a definitive and final Agreement between the parties containing the terms stated in this letter of intent as well as other terms and conditions to be determined. Neither party will rely on this letter of intent as binding on the other; any such reliance would be imprudent and unreasonable. Neither party will be bound unless and until a definitive and final Agreement has been executed and delivered by both parties and approved by their respective attorneys.

. . .

It is understood and agreed that this letter of intent does not contain all the essential or material terms that the parties expect will be part of the Agreement. Further efforts by

> either party to perform due diligence, or to carry out other acts in contemplation of the completing the transactions described in this letter may not be deemed evidence of intent by either party to be bound by this letter of intent. If the parties execute a definitive and final Agreement, that Agreement will supersede this letter. Failure to achieve a more complete Agreement will not, however, limit the enforceability of the paragraphs in this letter specified to be binding.

The letter of intent closes with this final paragraph:

> If the foregoing terms correctly state your understanding of the terms on which we will proceed with negotiations for preparation of a definitive and final Agreement, please sign and return the enclosed copy of this letter. As noted above, this letter of intent is not intended to be contractually binding on either party. It will act merely as the basis on which to proceed with further negotiations.

An agreement to reach a final agreement is unenforceable. *Demer v. Capital City Cable*, 190 Ga. App. 40, 43 (2) (378 SE2d 162) (1989); *Jackson v. Easters*, supra, 190 Ga. App. at 714-715. This letter of intent, although containing some terms to be included in the final agreement, by its terms was not binding on the parties. Under the circumstances, the trial court did not err by granting summary judgment to Russell.

3. The trial court also did not err by granting summary judgment to Russell on Overton's claim based on quantum meruit. Overton plainly stated that it would go to the MAGIC show and represent Cross Creek at its own expense and without expectation that it would be paid for its services if the deal was not reached. Both an e-mail message from Overton's president to Russell and paragraph 5 of the draft letter of intent, quoted above, show that Overton went to the MAGIC show with the understanding that the parties might not reach a final agreement, and that if that happened there would be "no funds transferred in either direction."

*Judgment affirmed. Andrews, P. J., and Adams, J., concur.*

DECIDED NOVEMBER 24, 2003.

*Herbert P. Schlanger*, for appellants.
*King & Spalding, L. Joseph Loveland, Jr.*, for appellees.