A04A1793. TERRY HUNT CONSTRUCTION COMPANY, INC. v. AON RISK SERVICES, INC. OF GEORGIA.
(613 SE2d 165)

BARNES, Judge.

Terry Hunt Construction Company, Inc. ("THCC"), an industrial builder, appeals the grant of summary judgment to AON Risk Services, Inc. of Georgia ("AON"), an insurance broker, on AON's claim to recover payments due for the procurement of insurance policies and products through a written Service and Retainer Agreement with THCC. AON contended that through a course of dealing THCC renewed the Service and Retainer Agreement between the parties, and thus agreed to pay the monthly service fee for another year even though no written, executed contract exists. THCC contends, however, that its CEO Terry Hunt objected to continuing the Service and Retainer Agreement because of AON's failure to provide services that were required under the previous Service and Retainer Agreement, and AON agreed to procure the insurance policies and products on a commission basis without a monthly service fee from THCC.

On appeal, THCC alleges the trial court erred by granting summary judgment because genuine issues of material fact exist on several issues concerning the contract, particularly on whether the contract was renewed, and on whether AON was entitled to recover on its open account claim and prejudgment interest. THCC also alleges the trial court erred by granting summary judgment to AON on THCC's counterclaim. Because we find that a genuine issue of material fact exists on whether the Service and Retainer Agreement was renewed through the course of dealings between the parties, we must reverse the grant of summary judgment to AON.

1. In this state,

[t]he standards applicable to motions for summary judgment are announced in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). When a trial court rules on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should

construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion. On appeal of the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence.

(Citations omitted.) *Overton Apparel v. Russell Corp.*, 264 Ga. App. 306, 307 (590 SE2d 260) (2003). Further, the court cannot resolve the facts or reconcile the issues when deciding whether summary judgment should be granted. *Fletcher v. Amax, Inc.*, 160 Ga. App. 692, 695 (288 SE2d 49) (1981).

2. Viewed as our summary judgment law requires, the evidence shows that THCC became a customer of AON when John Genet, who had been providing surety bonds to THCC at another agency, moved to AON and brought THCC's business with him. At the time, Genet was a senior vice president and head of the construction division at AON. Soon AON began obtaining property, casualty, and workers' compensation insurance for THCC as well, but this insurance was obtained on a commission basis. That is, AON would obtain insurance for THCC, and then would be compensated through a commission paid by the insurance company providing the policy.

Subsequently, AON made a presentation to THCC offering to obtain future insurance coverage for THCC and to provide THCC with other services, particularly safety related programs, through a Service and Retainer Agreement, which provided that THCC would pay AON an annual fee, prorated by month, and any commissions AON received would be credited to THCC's account. Because THCC was concerned about safety issues, Terry Hunt, on behalf of THCC, and John Genet, on behalf of AON signed a Service and Retainer Agreement ("S & R A") that would run from March 31, 1999, to March 31, 2000. Although, as shown below, THCC was not satisfied with AON's performance, any amounts due to AON under the S & R A are not involved in this appeal.

During his deposition, Hunt testified that Genet told him that AON would provide value-added consulting, safety, and other programs that would increase THCC's ability to perform and get business, but it did not work out because "there was never anything there." Consequently, he disputed paying the fees for services AON did not provide by saying that he would pay the fees when AON provided the service, and Genet said to forget about it. As a result, THCC did not pay the fees after March 2000. To Hunt, the failure to pay the bills is confirmation of his discussions with Genet.

Hunt further testified that AON wanted a new Service and Retainer Agreement, but he would not pay for one. Thus, they never negotiated a new Service and Retainer Agreement. Hunt believed

AON wanted the service fees, but he assumed AON was getting its commissions from the insurance companies providing the coverage. AON kept writing policies so he assumed that it was getting the money from other places.

THCC did not agree to anything that resembled a Service and Retainer Agreement after March 2000 and there was never any talk about it. As far as course of dealings, Hunt testified that his

> course of dealings with AON is John Genet; okay. John Genet provided me a quote in writing for what I was going to pay for insurance premium, which I agreed to pay, if that's what you're asking me. In terms of John Genet and AON, that's what I agreed to. Each year it was a new proposal. Each year it was a new set of terms. Each year it was a new rate.

Hunt believed that he negotiated new terms with AON through Genet, who he believed to be a senior vice president of AON and that the invoices THCC received from AON were the result of AON's accounting system's errors.

Hunt's affidavit states that

> [o]n multiple occasions I told Mr. Genet that THCC was not getting the services which AON had agreed to deliver and was obligated to deliver. Specifically, I did not believe that AON had in any fashion implemented, maintained or supported the safety program to which AON had agreed. I expressed this fact to Mr. Genet on several occasions and Mr. Genet on these occasions replied to me that he agreed AON was not providing the services which it had agreed and that THCC did not owe AON for those charges and that THCC did not have to worry about them. In addition, Mr. Genet repeatedly told me that AON's accounting system did not work properly and was often sending out incorrect bills to clients. I believe that I had such conversations with Mr. Genet on several telephone conversations and at meetings in Atlanta and Valdosta.

Hunt's affidavit is confirmed by the deposition testimony of Jeff Birdsong, THCC's controller, that Hunt always disputed the fees and discussed them with AON on several occasions, but did not formally dispute the fees in writing. He further testified that AON did not provide the safety programs. Nevertheless, Birdsong testified that he "would guess" that THCC and AON dealt with each other as if the S & R A were still in effect.

Hunt's affidavit further stated that at all times he did business with AON he did so through Genet; until he was told differently after this action commenced, Hunt believed that Genet was a senior vice president of AON; he was never informed that Genet was removed from that position; and Genet signed the S & R A on AON's behalf. To Hunt, Genet was AON, and he never knew anyone at AON other than Genet and his small group. Genet was in charge of a section of AON's business and "it was his business, it was his section, it was his thing," and he had total responsibility for that section. An organizational chart for AON shows Genet to be the senior vice president in charge of the construction services division.

Hunt's version of the events is also confirmed in most respects by Genet's deposition. Although Genet testified that he did not specifically recall discussing the money aspects of THCC's account with Hunt and he does not recall Hunt saying that he did not intend to pay the account, Hunt may have done so. And, Genet "may very well have" told Hunt not to worry about paying the account because that is what he tells all his customers. Also, even though Genet did not recall telling Hunt it was all right with AON that the bills not be paid, it did sound like something he would say to a customer.

Indeed, he recalls forgiving a fee-related item when he was a manager, but not after he ceased being a manager.[1] He did not recall if he forgave anything for THCC. He did recall telling Hunt that if he agreed to pay in writing, Hunt owed it, and if he did not agree, he might need to get an attorney. No one else was present when Genet and Hunt talked about the account.

Genet believed that AON's accounting system did not work. Clients complained frequently about the accounting system and billing, and he told them not to pay because the accounting system did not work.

Although a second Service and Retainer Agreement appears in the record, Birdsong, THCC's controller and the person whose signature ostensibly appears on the document for THCC, has denied that it is his signature, and has also denied any involvement with this document. Further, according to Hunt, Birdsong had no authority to sign contracts for THCC, and THCC did not represent to AON that he did.

After efforts to collect failed, AON filed suit claiming that THCC owed $237,910.36 under the renewed S & R A and also under the theory of open account. AON claimed that it had a Service and Retainer Agreement with THCC and that THCC breached the agreement. THCC answered denying liability because no contract existed.

---

[1] Genet ceased being a manager in December 1999.

After several amended complaints, amended answers and counter-claims, and discovery, both parties moved for summary judgment.

AON contended in its motion for summary judgment that it was entitled to recover because the course of dealings between the parties renewed the S & R A on the same terms, that THCC did not formally terminate the agreement, and that Genet had no authority to forgive the debt owed. Also, AON claimed that it was entitled to recover the money it was owed by THCC under the theory of open account.

THCC replied to AON's motion for summary judgment, stating that AON agreed to procure insurance policies after March 31, 2000, without collecting a monthly service fee from THCC, but instead would collect commissions from the insurance policy underwriters. This response was supported by Hunt's deposition, his affidavit, and other depositions.

3. Although generally contract disputes are particularly well suited for adjudication by summary judgment because construction of contracts is ordinarily a matter of law for the court, *Burns v. Reves*, 217 Ga. App. 316, 318 (1) (457 SE2d 178) (1995), in this instance the significant issue is not the contract's construction, but whether the contract existed at all as a matter of fact. "The construction of a contract is a question of law for the court. Where any matter of fact is involved, the jury should find the fact." OCGA § 13-2-1.

> A binding contract exists only where both parties have assented to all the terms. [OCGA §§ 13-3-1; 13-3-2.] In determining whether there was a mutual assent, courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent, or that meaning which the other contracting party knew the first party ascribed to his manifestations of assent. [*Cox Broadcasting Corp. v. Nat. Collegiate Athletic Assn.*, 250 Ga. 391, 395 (297 SE2d 733) (1982).]

*Legg v. Stovall Tire & Marine*, 245 Ga. App. 594, 596 (538 SE2d 489) (2000). "It is well settled that an agreement between two parties will occur only when the minds of the parties meet at the same time, upon the same subject-matter, and in the same sense." *Cox Broadcasting Corp. v. Nat. Collegiate Athletic Assn.*, supra, 250 Ga. at 395. AON, as the party alleging that a contract exists, "has the burden of proving its existence and its terms. [Cits.]" *Jackson v. Easters*, 190 Ga. App. 713, 714 (1) (379 SE2d 610) (1989), and as it had the burden of proving that a contract existed, it could not merely rely upon the absence of proof to establish THCC's case. Compare *Lau's Corp. v. Haskins*,

supra, 261 Ga. at 491 (a party "who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case").

Further, although in some cases the only evidence of the parties' intent is the express language of the contract, in cases such as this one, "the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement. Where such extrinsic evidence exists and is disputed, the question of whether a party has assented to the contract is generally a matter for the jury." (Citation and punctuation omitted.) *Legg v. Stovall Tire & Marine,* supra, 245 Ga. App. at 596. See also *Danfair Properties v. Bowen,* 222 Ga. App. 425, 426 (474 SE2d 295) (1996) ("The fact that [the defendant] contested whether there was a meeting of the minds on the terms . . . required that the issue be presented to the jury.").

Although the evidence may establish that representatives of neither AON nor THCC signed any agreement extending the S & R A beyond its termination date in March 2000, "[a]ssent to the terms of a contract may be given other than by signatures." *Cochran v. Eason,* 227 Ga. 316, 318 (1) (180 SE2d 702) (1971); *Legg v. Stovall Tire & Marine,* supra, 245 Ga. App. at 596. Relying on the Restatement of Contracts § 249, Course of Dealing, AON asserts that its conduct in continuing to provide THCC with insurance and other services and THCC's acceptance, shows THCC's assent to renewing the S & R A. Conversely, THCC contends that Hunt's repeated complaints to Genet, Genet's statements, and THCC's refusal to pay for services after March 2000 shows that it did not assent to renewing the agreement.

Thus, both parties argue that the evidence concerning the course of dealing between them supports just the opposite result. As courts are not authorized to weigh the evidence and determine the outcome, *Fletcher v. Amax, Inc.,* supra, 160 Ga. App. at 695, the trial court erred by granting summary judgment to AON on its claims against THCC and on THCC's counterclaims against AON. *Legg v. Stovall Tire & Marine,* supra, 245 Ga. App. at 597.

4. In light of our disposition of this appeal in Division 3, above, THCC's enumerations of error concerning the trial court's ruling are moot. Further, because THCC's entitlement to judgment on its counterclaims depends upon the factual determination of whether a contract existed, the trial court did not err by denying THCC's motion for summary judgment.

Accordingly, the trial court's grant of summary judgment in favor of AON must be reversed and the case remanded to the trial court for further proceedings.

*Judgment reversed and case remanded. Blackburn, P. J., and Mikell, J., concur.*

DECIDED MARCH 29, 2005.

*Stone & Baxter, Ward Stone, Jr., Austin E. Carter*, for appellant.
*Berman, Fink & Van Horn, Lucian Gillis, Jr.*, for appellee.