A07A0342. McKENNA et al. v. CAPITAL RESOURCE PARTNERS, IV, L.P. et al.
(650 SE2d 580)

BARNES, Chief Judge.

The appellant-plaintiffs are minority shareholders in Loyaltyworks.[1] They sued the company and its majority shareholder Capital Resource Partners, IV, L.P. (CRP) to enforce a verbal settlement

---

[29] *De'Mon v. State*, 262 Ga. App. 10, 15 (5) (584 SE2d 639) (2003).
[1] The plaintiffs are Aileen McKenna, Mylle Mangum, Brian J. Learst, Thomas W. Spry, Riley Mangum, TMH Investment Company, and Greg Rorke.

agreement. The defendants denied reaching an agreement, contending that any agreement had to be in writing to be binding. Loyaltyworks also counterclaimed against plaintiff Rorke on a promissory note he had signed in exchange for exercising his option to buy stock in the company. The trial court granted summary judgment to the appellee-defendants on the main complaint, and to Loyaltyworks on its counterclaim against Rorke. Because we conclude that questions of fact exist regarding whether the parties reached an agreement, we reverse the trial court as to both grants of summary judgment.

On appeal we review the trial court's grant of summary judgment de novo to determine whether the evidence, viewed in the light most favorable to the nonmoving party, demonstrates a genuine issue of material fact. Summary judgment is proper only when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Preferred Real Estate Equities v. Housing Systems,* 248 Ga. App. 745 (548 SE2d 646) (2001). On appeal of the grant or denial of a motion for summary judgment, this court conducts reviews of the law and the evidence de novo. *Overton Apparel v. Russell Corp.,* 264 Ga. App. 306, 307 (590 SE2d 260) (2003). Further, the court cannot resolve the facts or reconcile the issues when deciding whether summary judgment should be granted. *Fletcher v. Amax, Inc.,* 160 Ga. App. 692, 695 (288 SE2d 49) (1981).

Viewed in this light, the record shows that the plaintiffs hired attorney Everette Doffermyre in late 2003 to investigate whether they should sue Loyaltyworks and its two majority shareholders, CRP and Equity-South Partners, L.P., for breach of fiduciary duty. The minority shareholders believed that these entities refinanced the company to dilute their minority shares below two percent, thus rendering them unable to force the company to disclose its financial records. Even before this "downround financing," the plaintiffs had received little or no communication from Loyaltyworks, had no input into company decisions, and did not know how the company was doing financially. Loyaltyworks' board of directors would not pursue offers to buy the company in 2002, because it said the company was not for sale. Although Loyaltyworks had issued options at $2 per share in February 2002, it refinanced the company at 26 cents per share in December 2002. Rorke also wanted to return the 100,000 shares of Loyaltyworks stock he obtained in 2000 when he executed his options at $1 per share and cancel his $100,000 note which was exchanged for and was secured by that stock.

Doffermyre talked to Loyaltyworks' lawyer, Marc Gustafson, in October 2003 to discuss his clients' claims that the company and its majority shareholders had breached their fiduciary duty, then sent him an offer to settle, indicating that his clients would release their claims if the company bought their shares for a specific amount and

cancelled Rorke's $100,000 note. Loyaltyworks' lawyer responded that the company would put together a counterproposal, but then in February 2004, Loyaltyworks' CEO replied that it could not accept the offer because doing so would render the company insolvent.

Stephen Jenks then sent a letter on February 24, 2004, to some of the minority shareholders, offering to buy their stock in Loyaltyworks for a specific price, "contingent upon execution of a mutually acceptable purchase agreement, . . . and neither [the shareholder] nor CRP shall be under any legal obligation unless and until the purchase agreement is executed." Jenks is Loyaltyworks' former chairman of the board and one of the three managing partners of CRP, which is Loyaltyworks' majority shareholder. Each plaintiff testified that he or she was not interested in negotiating a simple stock sale individually with Jenks, which Loyaltyworks' former CEO said she could have done on her own. Instead, they wanted to deal with all of their claims against Loyaltyworks for breach of fiduciary duty, as Doffermyre had already tried to do directly with the company.

Doffermyre's clients told him about the letter, and Doffermyre contacted Jenks to continue the discussions he had begun with Loyaltyworks' lawyer regarding his clients' claims against the company, because Jenks appeared to be someone who was willing "to go beyond" a stock sale and resolve the anticipated lawsuit. When asked if the plaintiffs had authorized him to act on their behalf in responding to this letter, Doffermyre said no, he had already been authorized to act from the time they initially hired him. Doffermyre said he called Jenks because he "appeared . . . to be a fruitful person to talk to about trying to resolve the litigation that I had been engaged to bring." He was a board member, a potential defendant, and had expressed an interest in buying stock from Doffermyre's clients, which Doffermyre thought they could "go beyond." If all his clients were going to do was sell their stock, they did not need Doffermyre; they wanted more than that.

Doffermyre testified that when he first talked to Jenks, Jenks said he was "interested as an investor in buying your clients' shares." Doffermyre asked, "Are you saying you're not interested in negotiating a resolution of claims but just wanted to buy their shares and not obtain a global resolution?" Jenks responded, according to Doffermyre, "No, you're right. I too want a resolution." Doffermyre offered to settle all claims for $2.6 million; Jenks countered he was willing to pay $900,000, but would talk to "his folk" and get back to Doffermyre. Jenks then e-mailed Doffermyre that he was "willing to amend my initial offer" for total consideration of $971,171, or $71,171 more than he previously offered. Doffermyre counter-offered; and Jenks counter-offered again with his "best and final offer." While the defendants argue that the language in Jenks' e-mail about amending his offer

"explicitly" refers to the letter he sent to the shareholders, it could as easily refer to the first offer he made to Doffermyre.

Doffermyre accepted that "final" offer contingent upon Loyalty-works cancelling Rorke's note, because some of the stock Rorke proposed to return to the company was secured by the note. Jenks e-mailed the other directors on Loyaltyworks' board that he had a verbal agreement to buy the plaintiffs' stock, cancel the note, and secure releases from all parties, listing the note cancellation as a "related topic." One of the members responded, "You have our support." The next day, Loyaltyworks' CFO e-mailed Jenks, confirming Rorke's share numbers and stating that their lawyer was "working up the Board consent for the forgiveness of the Rorke note." The next day, Jenks left Doffermyre a voicemail stating that they had an agreement and that his lawyer would send him a written agreement with release language for his review.

Two days later, CRP's lawyer contacted Doffermyre to begin drafting the agreement documents, and two weeks later sent a draft "Security Purchase Agreement" to him. Loyaltyworks' lawyer also sent Doffermyre a draft of a "Notice and Waiver of Right of First Refusal and Right of Co-Sale," which provided that CRP had notified Loyaltyworks of its verbal agreement to buy the shares held by the plaintiffs, and a draft "Note Cancellation Agreement and Lost Stock Affidavit." Doffermyre edited the securities purchase agreement and returned it to CRP's lawyer.

The next day, Doffermyre had "a pleasant conversation" with Loyaltyworks' lawyer regarding the note cancellation agreement and lost stock certificate. Thirty minutes later, CRP's lawyer called Doffermyre and said that Jenks had changed his mind and did not want to go through with the deal because the company's financial performance was "not what it had been hoped to be." This suit followed.

The trial court granted summary judgment to the defendants, finding that CRP had clearly indicated before reaching the verbal agreement that it did not intend to be bound before executing a written agreement, and finding that the parties had disagreed on material terms. Because of these findings, the trial court also granted summary judgment to Loyaltyworks on its counterclaim on Rorke's note.

The appellant-shareholders contend on appeal that the trial court erred (1) in finding that CRP's offer was contingent upon the parties executing a written purchase agreement; (2) in finding that the parties had not agreed to all material terms; and (3) in finding that Rorke's note had not been cancelled. They assert that genuine issues of material fact exist as to all three issues, which should be tried by a jury.

1. The first issue is whether a factual dispute exists regarding whether any agreement was contingent upon the parties executing a written agreement. Although generally contract disputes may be well suited for summary judgment adjudication because construction of contracts is ordinarily a matter of law for the court, "in this instance the [first] significant issue is not the contract's construction, but whether the contract existed at all as a matter of fact. 'The construction of a contract is a question of law for the court. Where any matter of fact is involved, the jury should find the fact.' OCGA § 13-2-1." *Terry Hunt Constr. v. AON Risk Svcs. &c.*, 272 Ga. App. 547, 551 (3) (613 SE2d 165) (2005).

> In determining whether there was a mutual assent, courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent, or that meaning which the other contracting party knew the first party ascribed to his manifestations of assent. [*Cox Broadcasting Corp. v. Nat. Collegiate Athletic Assn.*, 250 Ga. 391, 395 (297 SE2d 733) (1982).]

(Punctuation omitted.) *Legg v. Stovall Tire & Marine*, 245 Ga. App. 594, 596 (538 SE2d 489) (2000).
Further,

> in cases such as this one, the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement. Where such extrinsic evidence exists and is disputed, the question of whether a party has assented to the contract is generally a matter for the jury.

(Citations and punctuation omitted.) *Terry Hunt Constr. v. AON Risk Svcs.*, supra, 272 Ga. App. at 552 (3).
In other words, would a reasonable party have understood, based on CRP's letter to the shareholders offering to buy their stock, that CRP did not intend to be bound by any verbal agreement regarding the settlement of the plaintiffs' breach of fiduciary duty claims before the execution of a written contract? The facts in the record establish a jury question regarding this issue. If the plaintiffs had responded to Jenks' offer to buy the stock and had negotiated only that sale, then clearly they would have been bound by Jenks' terms of the offer which included the writing requirement. The record shows, however, that the plaintiffs did not respond to Jenks' offer to buy their shares, but

instead directed Doffermyre to continue negotiations to settle their claim that Loyaltyworks had breached its fiduciary duty to them. That claim involved more than merely the stock sale, but also releases of their claims and the cancellation of Rorke's note.

Doffermyre argues that he was continuing the negotiations he started with Loyaltyworks. CRP contends that it never relinquished the writing requirement it had established with the shareholders. Based on the evidence, at least an issue of fact exists as to whether a reasonable person would have understood that CRP did not intend to be bound before signing a document. The writing requirement was included only in Jenks' individual offers to each minority shareholder to buy their stock. All of the shareholders testified that they were not interested in pursuing those individual offers, because they wanted to resolve their breach of fiduciary duty claims against Loyaltyworks. Doffermyre testified consistently that he did not call Jenks to discuss that offer, but rather to discuss a global settlement of the plaintiffs' claims, which involved more than just the stock sale. An offer to an individual shareholder for that shareholder's stock, contingent upon executing a written document, does not automatically apply to a negotiation to sell all of those shareholders' stock for a lump sum in exchange for releases. Therefore the trial court erred in concluding that the record established no questions of fact as to whether the parties had reached an agreement because they had not signed a written document.

2. If a signed writing was not required to find that the parties reached a binding agreement, the next question is whether they reached a verbal agreement as to all essential terms. A binding contract exists only where both parties have assented to all the terms. OCGA §§ 13-3-1; 13-3-2.

Again, the record establishes that a fact question exists in this regard. Doffermyre testified that the agreement consisted of three parts: selling all of the plaintiffs' stock in exchange for a total sum; executing releases; and cancelling Rorke's note, all of which he and Jenks agreed upon. Those terms are reflected in the parties' draft securities purchase agreement and the note cancellation document.

(a) The defendants claim that Doffermyre's edits to the securities purchase agreement prove that the parties had not agreed to all essential terms. Most of the edits are clearly not substantial, such as changing or deleting subheadings, changing the method of payment from checks to wired funds, deleting a phrase stating that the plaintiffs had had an opportunity to discuss the company's business affairs to one stating that the plaintiffs had made an independent decision to sell their stock, and inserted a mutual release from the company to the plaintiffs, a mirror image of the existing provision that the plaintiffs released the company. Nothing in the record

suggests that the defendants objected to waiving their claims against the plaintiffs, or that they had any substantive claims to waive.

Doffermyre also added that Brian Learst held options to buy 296,000 shares of common stock in Loyaltyworks. The defendants argue that this change shows that all terms had not been agreed upon. To the contrary, Doffermyre testified that the defendants' concerns regarding his clients' options and warrants arose after he and Jenks had agreed on the three major terms of stock sales, releases, and note cancellation. When he saw that the agreement included language cancelling the plaintiffs' options and warrants, he notified CRP's lawyer that this was not part of the agreement, and that Jenks said during their discussions that he did not care one way or the other about the options and warrants. Doffermyre was "miffed" that the defendants were adding additional items but thought they were of no consequence, being in the nature of cleaning up the details, because if there were any outstanding options and warrants they had no current or foreseeable value. Jenks testified that he did not remember discussing the options and warrants with Doffermyre. Thus Doffermyre's testimony is the only evidence in the record regarding this issue, and he said he was merely accommodating the defendants' desire to address those issues in addition to the terms agreed upon.

(b) The defendants also contend that Jenks had no authority, apparent or actual, to act as an agent for Loyaltyworks. This argument ignores the realities of Jenks' and CRP's interlocking corporate structures, in which Jenks served as the managing member of CRP, which controlled the majority of Loyaltyworks' shares. At the very least, a question of fact exists whether Jenks had apparent authority to resolve or facilitate the resolution of Rorke's note cancellation in exchange for the stock secured by the note.

(c) Finally, the defendants argue that the document waiving the rights of first refusal and co-sale was never signed, and because any agreement would be contingent upon that waiver, it is not enforceable. But the parties had already exchanged drafts of this document, and the record shows no indication that these waivers would not have been granted. The only reason the waivers had not been signed was because Jenks withdrew from the deal. This again is an issue of fact for a jury to decide.

The trial court erred in granting summary judgment to the defendants on this ground.

3. Finally, the trial court granted summary judgment to Loyaltyworks on its claim against Rorke for his $100,000 promissory note. We held in Division 1 that a fact question exists as to whether the parties reached an agreement for CRP to purchase all of these minority shareholders' stock. If they did reach an agreement, it

included the 100,000 shares of common stock that Rorke obtained in exchange for signing the note. In an e-mail message about the note, Loyaltyworks' CFO states to Jenks (copying Loyaltyworks' president):

Steve, the 400,000 shares of common includes Greg Rorke's 100,000 shares. Since we are forgiving his note for these shares (e.g., he never paid for the shares), only 300,000 shares of common are being purchased for $150,000 and the total aggregate purchase price is $1,327,612. Our legal counsel is working up the Board consent for the forgiveness of the Rorke note in exchange for the 100,000 shares of common.

The defendants argue that Jenks had no authority to act for Loyaltyworks, an issue addressed in Division 2. They further argue that the Board had never formally voted to forgive the note. Whether Jenks had authority to speak for the board is at least a question of fact. That the board never actually voted on the issue is not dispositive, especially as Jenks changed his mind about buying the plaintiffs' stock.

Accordingly, the trial court erred in granting summary judgment to Loyaltyworks on Rorke's note.

*Judgment reversed. Smith, P. J., and Miller, J., concur.*

DECIDED JUNE 25, 2007 —
RECONSIDERATIONS DENIED JULY 27, 2007 —

*Brown & Shamp, Laura M. Shamp*, for appellants.
*Powell Goldstein, Daniel G. Ashburn, Seyfarth Shaw, Matthew N. Foree, Charles W. Ingraham*, for appellees.