A07A2251, A07A2252. McGUIRE HOLDINGS, LLLP v. TSQ
PARTNERS, LLC; and vice versa.
(660 SE2d 397)

RUFFIN, Judge.

McGuire Holdings, LLLP ("McGuire") and TSQ Partners, LLC ("TSQ") own adjoining commercial lots. McGuire sued TSQ to enforce the terms of an easement agreement governing both parcels, and TSQ filed a counterclaim for trespass. The parties filed cross-motions for summary judgment, and the trial court (1) granted TSQ's motion for summary judgment as to McGuire's claim for reimbursement under the easement agreement and (2) denied the parties' motions as to McGuire's use of a detention pond located on TSQ's property. McGuire appeals in Case No. A07A2251, contending that the trial court erred in striking certain affidavits, in granting TSQ's motion for summary judgment as to its claim for reimbursement, and in denying McGuire's motion for summary judgment on its claim that it had the right of full access to the detention pond. TSQ appeals in Case No. A07A2252, alleging that the trial court erred in denying its motion for summary judgment as to its claim for trespass and in failing to award TSQ attorney fees arising out of its defense of McGuire's claim for reimbursement. For reasons that follow, we affirm in part and reverse in part in Case No. A07A2251, and we dismiss Case No. A07A2252 as moot.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts warrant judgment as a matter of law.[1] "We review the evidence and record de novo, construing all reasonable conclusions and inferences in favor of the nonmovant."[2] "However, 'rules of contract construction and interpretation are separate from those rules allocating burdens of proof at trial and on motion for summary judgment,' and thus are to be independently applied."[3]

So viewed, the evidence shows that Due West, LLC owned property that it subdivided into contiguous Parcels "A" and "B." TSQ purchased Parcel B from Due West and, in connection with the sale, executed the "Due West Easement Agreement" on August 21, 2002. The Easement Agreement provided that Due West

desires to establish hereunder that the development of Parcel B shall be conducted in such manner as to provide easements and development use rights for the benefit of

---

[1] See OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[2] *Kace Investments v. Hull*, 263 Ga. App. 296, 296-297 (587 SE2d 800) (2003).

[3] *RLI Ins. Co. v. Highlands on Ponce*, 280 Ga. App. 798 (635 SE2d 168) (2006).

Parcel A for sanitary sewer, stormwater drainage, and access for ingress/egress to the adjacent public roadways. Further, [Due West] desires to provide hereunder that the responsibility for the installation and cost of improvements for all such easements and development rights shall be allocated specifically to the Parcel B owner[, TSQ,] for the benefit of the contiguous Parcel A and the owner thereof.

The Agreement required TSQ to clear, grade, and fill Parcel A to "an average elevation of approximately 1,067 feet with slope to drain of two percent (2%), substantially as shown on the plan." TSQ was also required to install a sanitary sewer system, a roadway for ingress/egress, and a waterline for the benefit of Parcel A. The Agreement further provided that if TSQ failed to complete its obligations thereunder within 12 months from the execution date of the Agreement, the owner of Parcel A would have the right to make the improvements and to be reimbursed by TSQ upon proof of costs.

TSQ graded Parcel A and installed a sanitary sewer system and a roadway on Parcel A. According to TSQ, it graded Parcel A to a drain located on the northeast corner of Parcel A, consistent with the Easement Agreement requirements and the plans approved by the county.[4]

After it purchased the property, McGuire reversed the grade of Parcel A to cause the stormwater to drain into a detention pond located on TSQ's property instead of the drain on Parcel A. McGuire sought reimbursement from TSQ for the grading costs pursuant to the Easement Agreement and sued to recover the costs after TSQ refused to pay. TSQ denied all liability and filed a counterclaim, alleging that McGuire's unauthorized use of the detention pond on TSQ's property — in a manner inconsistent with the Agreement — constituted trespass, and TSQ sought attorney fees.[5]

McGuire filed motions for summary judgment on all pending claims. TSQ filed a cross-motion for partial summary judgment as to all claims and moved to strike certain affidavits filed by McGuire.[6]

---

[4] According to one of TSQ's witnesses, "[t]he Approved Plans allowed for a small amount of stormwater from the southwest side of Parcel A to flow into TSQ's detention pond, but the majority of Parcel A stormwater runoff was intended to flow along the natural contour of the land to the drain located on the northeast side of Parcel A near Kennesaw Due West Road."

[5] The Easement Agreement provided that the prevailing party in a legal proceeding to enforce the Agreement was entitled to recover reasonable attorney fees and costs from the opposing party. McGuire amended its complaint to seek attorney fees under this provision as well.

[6] TSQ sought summary judgment as to liability for the trespass claim, leaving the amount of damages and attorney fees for trial.

Following a hearing, the trial court entered an order striking two affidavits relied upon by McGuire. The court entered a separate order granting TSQ's motion for summary judgment as to McGuire's claim for reimbursement for repaving Parcel A and denying the parties' cross-motions for summary judgment as to TSQ's trespass claim. The parties cross-appeal, challenging the trial court's rulings.

## Case No. A07A2251

1. McGuire contends that the trial court erred in granting summary judgment to TSQ as to McGuire's claim for reimbursement for its grading work under the Easement Agreement. McGuire alleged that TSQ failed to grade Parcel A such that the average elevation was approximately 1,067 feet. In its order, the trial court concluded that McGuire did not provide sufficient evidence regarding the elevation of Parcel A following TSQ's completion of grading work and before McGuire's grading, noting that McGuire's paving of the parcel obliterated evidence of the previous elevation of the property.

(a) McGuire contends that the trial court erred in striking a portion of one of Bryan Arroyave's affidavits. According to the trial court's order, McGuire submitted two affidavits of Brian Arroyave, one dated June 29, 2006, and one dated August 30, 2006. The court struck the third paragraph of the first affidavit and the fourth paragraph of the second affidavit. On appeal, McGuire purports to challenge the striking of the fourth paragraph of the *first* affidavit — a ruling that the trial court did not make. Thus, this enumeration presents no basis for reversal.[7]

(b) McGuire also challenges the trial court's refusal to consider the affidavit of Mark Lee. Lee also executed two affidavits, the first provided by TSQ and the second by McGuire.[8] In his initial affidavit dated August 18, 2006, Lee states that he was hired by McGuire to survey Parcel A and that "[his] work resulted in" a February 7, 2005 survey that was attached to the affidavit as an exhibit. Lee also avers that he "was not asked to, nor did [he], calculate the average elevation of Parcel A at any time and nowhere on the Topo[graphical] Survey does it state that the average elevation of Parcel A is 1,062 feet." In his second affidavit, notarized on September 6, 2006, Lee concludes that the average elevation of Parcel A as of January 17, 2005 was 1,063.537 feet, stating that his opinion was based on the February 7, 2005

---

[7] See *Carlisle v. Abend*, 288 Ga. App. 150, 151 (1) (653 SE2d 388) (2007) (the appellant bears the burden of establishing error affirmatively in the record); *Schmitt v. Jackson County*, 267 Ga. App. 764, 766 (2) (601 SE2d 169) (2004).

[8] The trial court's order appears to address only Lee's second affidavit.

topographical survey, "survey shots" that he took, and "the fact that the small mound of dirt circled on [the survey] was removed by TSQ."

The trial court implicitly struck Lee's second affidavit, concluding that it contained no indication of his qualifications or the methodology used to reach his conclusions and "fail[ed] to provide competent evidence regarding the average elevation of [P]arcel A" in the time after TSQ's grading and before McGuire began its grading.[9]

OCGA § 24-9-67.1 (b), which governs the admissibility of expert testimony, states that

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact in any cause of action to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if: (1) The testimony is based upon sufficient facts or data which are or will be admitted into evidence at the hearing or trial; (2) The testimony is the product of reliable principles and methods; and (3) The witness has applied the principles and methods reliably to the facts of the case.

" 'The question of whether a witness is qualified to render an opinion as an expert is a legal determination for the trial court and will not be disturbed absent a manifest abuse of discretion.' "[10]

On appeal, McGuire argues that the trial court's ruling "conflicts with the long standing principle of this Court that conclusions reached by surveyors as to elevation are not considered 'opinion' testimony[,] but rather are considered factual testimony." McGuire provides two citations to support this purported "long standing principle" — Bridges v. Dept. of Transp.[11] and Ford v. Ga. Power Co.[12] — neither of which involve conclusions by surveyors regarding elevation. Bridges v. Dept. of Transp. involved the survey of a highway to determine right-of-way, not land elevation. Moreover, it supports the trial court's ruling, as we concluded that in the absence of a factual basis therefor, a surveyor's conclusory statements lacked probative value and do not give rise to a triable issue.[13] And our conclusion in Ford v. Ga. Power Co. — that factual averments as to

---

[9] Although the order did not indicate the date of the affidavit that the trial court implicitly struck, TSQ moved to strike Lee's second affidavit only.

[10] *Moran v. Kia Motors America*, 276 Ga. App. 96, 97 (1) (622 SE2d 439) (2005).

[11] 209 Ga. App. 33 (432 SE2d 634) (1993).

[12] 151 Ga. App. 748 (261 SE2d 474) (1979).

[13] See id.

the height of a power transmission line are admissible — has no relevance here.[14] Notably, McGuire fails to mention authority arguably contrary to its position, including *Jakobsen v. Colonial Pipeline Co.*,[15] in which we stated that "Georgia courts have consistently recognized surveyors as experts."

Here, other than stating that he had been employed as a full-time surveyor since 1982, Lee offered no testimony whatsoever regarding his "knowledge, skill, experience, training, or education."[16] He never stated that he had any experience in determining land elevation, and he failed to provide any indication of the principles and methods he employed in reaching his conclusions, including whether they were reliable. Thus, we discern no abuse of discretion in the trial court's decision to exclude Lee's testimony on summary judgment.[17]

Moreover, Lee failed to attach to his affidavit sworn or certified copies of the "survey shots" that he relied upon in reaching his conclusion regarding the average elevation of the parcel. This failure provides a separate basis for the trial court's exclusion of Lee's affidavit, as "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."[18]

(c) However, notwithstanding the trial court's proper exclusion of portions of Lee and Arroyave's affidavit testimony, the remaining evidence presented genuine issues of material fact that precluded summary judgment on this issue.

McGuire also relies upon the deposition testimony of George Nemchik, its representative designated pursuant to OCGA § 9-11-30 (b) (6), who testified that before McGuire began grading Parcel A, the property had an average elevation of approximately 1,062 feet.[19]

---

[14] 151 Ga. App. at 749 (1) (B).

[15] 237 Ga. App. 441, 447 (4) (514 SE2d 851) (1999) (physical precedent only).

[16] See OCGA § 24-9-67.1.

[17] See OCGA § 24-9-67.1; *Moran*, supra; *Bridges*, supra.

[18] OCGA § 9-11-56 (e); see *Pratt v. Tri City Hosp. Auth.*, 193 Ga. App. 473 (388 SE2d 69) (1989) ("Where records relied upon and referred to in an affidavit are neither attached to the affidavit nor included in the record and clearly identified in the affidavit, the affidavit is insufficient.").

[19] TSQ contends that McGuire waived its right to rely on Nemchik's deposition by "fail[ing] to cite to [such] testimony anywhere in the proceedings below" and asserts that McGuire "never argued that this evidence created a material issue of fact." In fact, McGuire specifically stated in its second motion for summary judgment that it was relying upon Nemchik's deposition testimony, which it filed with the trial court. And although it does not appear that McGuire argued to the trial court that Nemchik's testimony demonstrated its entitlement to reimbursement, our review on summary judgment is de novo, and therefore we have considered the testimony on appeal. See *Harper v. Copelco Capital*, 249 Ga. App. 453, 453-454 (548 SE2d 53) (2001).

Nemchik, an officer, director and shareholder of McGuire, testified that he performed an average elevation survey of Parcel A using a ruler and a laser spotter. He did not, however, indicate that he had any training, education, or experience in land surveying, or even that he based his conclusion regarding the elevation of the property on his own measurements.

Instead, Nemchik reached his conclusions using two separate methods. First, he testified that a particular exhibit — which appears to be a Due West plat of the property — "shows a dotted line, which is I think 1,062. It's at mid[-]point in the site where 1,058 is at one end and the dotted line up here is 1,067. Mid[-]point is 1,062." Notwithstanding our inability to discern such numbers on the exhibit, we fail to see how it supports his conclusion that the *average elevation* of the site — as opposed to the "mid-point" — was 1,062 feet, and Nemchik fails to so explain. He also testified, however, that he further bases his opinion on the fact that after McGuire finished its grading work, which included the addition of "632 loads of dirt, 16 yards per load," the average elevation of the parcel was 1,066 feet.[20] In other words, it "took 632 loads of dirt to get it a foot shorter than it was supposed to be as stated in this [easement] agreement."

TSQ argues that we should construe Nemchik's deposition testimony against McGuire because it conflicts with a Supplement to the Easement Agreement in which TSQ contends "McGuire agreed and certified that TSQ met all of its grading obligations." However, although McGuire signed the Supplement, the provision on which TSQ relies states that *"Due West and TSQ hereby certify to each other and to McGuire* that . . . all parties to the Easement Agreement or bound thereby are in compliance with all current obligations under the Easement Agreement and that no default exists thereunder."[21] It does not state that *McGuire* certified that TSQ was in compliance with the agreement. Thus, we find this argument unavailing.

In contrast to Nemchik's testimony, TSQ relies upon the affidavits of Charles H. Nichols and Douglas B. White to support its position that the property had an average elevation of 1,067 feet before McGuire began its grading work. Neither White nor Nichols indicated that they personally performed land elevation surveys on the property, nor did they state that they are qualified to do so. Instead, they both testified that final design plans for the property prepared by an engineer and approved by Cobb County "show that the east side of Parcel A had an elevation of approximately 1070 feet

---

[20] TSQ does not dispute that the elevation of the property after McGuire completed its grading work was 1,066 feet.

[21] (Emphasis supplied.)

sloping to an elevation of approximately 1058 feet near the drain in the northwest corner of Parcel A." We find TSQ's reliance on this evidence confusing, given that Nemchik apparently relies on the same plans to conclude that the average elevation of the property before McGuire began its work was 1,062 feet.

And we find Nichols's statement that "TSQ caused Parcel A to be graded with an average elevation of approximately 1,067 feet" unpersuasive, as he failed to explain the basis for this conclusion or even to indicate — nor can we discern from the contents of the affidavit — whether it is based upon his personal knowledge.[22]

Given the conflicting testimony among Nemchik, Nichols, and White, we conclude that there are genuine issues of fact which preclude summary judgment as to McGuire's claim for reimbursement for grading work.[23] Thus, the trial court erred in granting summary judgment to TSQ on this claim.[24]

2. McGuire further contends that the trial court erred in denying its motion for summary judgment on the issue of whether McGuire was entitled to use the detention pond located on TSQ's property. We disagree.

(a) McGuire contends that the Easement Agreement and the plat attached thereto grant the owner of Parcel A easement rights to the detention area. Under the Agreement, TSQ was required to clear, grade, and fill Parcel A to "an average elevation of approximately 1,067 feet with slope to drain of two percent (2%), substantially as shown on the [attached] plan." The attached plan depicts the two adjoining land parcels; TSQ's parcel contains an area labeled "detention area."

McGuire relies on *Fairfield Corp. No. 1 v. Thornton*,[25] in which Thornton purchased a lot in a subdivision. His warranty deed for the lot referred to a recorded plat on which the common area adjacent to Thornton's lot was designated as "drainage area." The developer later recorded a revised plat incorporating the drainage area into a separate lot and sued Thornton, seeking to enjoin him from using the drainage area. On appeal, the Supreme Court of Georgia concluded

---

[22] See OCGA § 9-11-56 (e) ("Supporting and opposing affidavits shall be made on personal knowledge."); *Oehlerich v. Llewellyn*, 285 Ga. App. 738, 740 (1) (647 SE2d 399) (2007) (" 'Affidavits supporting and opposing summary judgment must be made on personal knowledge and must set forth such facts as would be admissible in the evidence.' ").

[23] See OCGA § 9-11-56 (c); *Atlanta Integrity Mtg. v. Ben Hill United Methodist Church*, 286 Ga. App. 795, 799 (650 SE2d 359) (2007); *McKenna v. Capital Resource Partners, IV*, 286 Ga. App. 828, 834-835 (3) (650 SE2d 580) (2007).

[24] See *McKenna*, supra.

[25] 258 Ga. 805 (374 SE2d 727) (1989).

that "because Thornton purchased his lot in the subdivision accord-ing to the recorded plat[,] he has an easement by express grant over the drainage area."[26]

*Fairfield* is distinguishable, as in that case the drainage area was located in a common area of the subdivision at the time Thornton purchased the lot. Here, in contrast, the detention area was located entirely on Parcel B when McGuire purchased it. Thus, *Fairfield* does not require reversal.

(b) McGuire's claim regarding access to the detention pond therefore turns on an interpretation of the Easement Agreement. "[T]he construction of a contract is a question of law for the court based on the intent of the parties as set forth in the contract."[27] The trial court must follow a three-step process in construing the con-tract.[28] First, the court must decide whether the contract language is clear and unambiguous; if so, the court simply enforces the agree-ment according to its terms.[29] If the court determines that the language is ambiguous, it must then apply the applicable rules of contract construction.[30] If after doing so the ambiguity still remains, the jury or other factfinder must resolve the ambiguity.[31]

"Ambiguity is defined as duplicity, indistinctness, an uncertainty of meaning or expression used in a written instrument, and it also signifies [being] open to various interpretations."[32] Here, the Agree-ment required TSQ to clear, grade, and fill Parcel A to "an average elevation of approximately 1,067 feet with slope to drain of two percent (2%), substantially as shown on the [attached] plan."

We agree with the trial court that the language of the Agreement was ambiguous. Clearly, it required TSQ to construct a water drain-age system for the benefit of Parcel A. It is unclear, however, whether the term "drain" was used as a noun or a verb. If "drain" was used as a noun — as TSQ contends — the Agreement could be interpreted to mean that the water runoff from Parcel A was intended to flow into a drain located on Parcel A. On the other hand, if the term "drain" was used as a verb — as McGuire argues — the Agreement could be construed to grant McGuire access to the detention area shown in the plat referenced therein for stormwater drainage.

And even after applying the applicable rules of construction, including OCGA § 13-2-2 (1), (2), (4), (5) and (6), the ambiguity

---

[26] Id.

[27] *Deep Six v. Abernathy*, 246 Ga. App. 71, 73 (2) (538 SE2d 886) (2000).

[28] See id.

[29] See *RLI Ins.*, supra at 800 (1).

[30] See *Deep Six*, supra.

[31] See *RLI Ins.*, supra.

[32] (Punctuation omitted.) Id.

remains, and thus the meaning must be resolved by a jury.[33] Here, the parties vigorously contest the issue of intent with regard to the detention area on TSQ's property.[34] Because questions of fact remain as to the parties' intent, the trial court properly denied summary judgment as to this issue.[35]

3. McGuire further alleges that the trial court erred in striking portions of the affidavit of Terry Sheehan. In two affidavits, Sheehan testified that Due West would not have sold Parcel B to any party unless the purchaser agreed to grade Parcel A pursuant to the Easement Agreement and to establish a stormwater drainage facility on Parcel B that Parcel A would use.

In its order, the trial court struck Sheehan's statements regarding Due West's intention because "both parties agree that the terms of the contract are unambiguous, the terms themselves are the highest and best evidence, and there is no need for parol[ ] evidence." But as the trial court concluded — and we have affirmed in Division 2 (b) — the language of the Agreement was ambiguous and therefore, parol evidence is admissible to show the parties' intent.[36] Thus, the trial court abused its discretion in striking Sheehan's affidavit on this basis.

The trial court also struck portions of Sheehan's affidavit based on his purported failure to establish his position with Due West at the time of the Agreement. But Sheehan's second affidavit states that he was a member of Due West at the relevant time.[37] The trial court also concluded that "[i]t is also unclear what [Sheehan's] qualifications are and what research has been done or is available to him to make conclusions about the effect of the size of the lot in question and

---

[33] See *UniFund Financial Corp. v. Donaghue*, 288 Ga. App. 81, 83 (653 SE2d 513) (2007) (" 'Parol evidence is only admissible when any ambiguity cannot be resolved through the application of the rules of contract construction . . . and when such unresolved ambiguity must be resolved by a jury as a matter of disputed fact.' "); *Holcim (US), Inc. v. AMDG, Inc.*, 265 Ga. App. 818, 820 (596 SE2d 197) (2004).

[34] Leo Poinsette, the managing member of Due West, states in an affidavit that Due West intended that the stormwater runoff from Parcel A flow into the detention area located on Parcel B. In contrast, Nichols and White, members of TSQ involved in the purchase, design, and development of Parcel B, testified that "the majority of Parcel A stormwater runoff was intended to flow along the natural contour of the land to the drain located on the northeast side of Parcel A."

[35] See *Western Pacific Mut. Ins. Co. v. Davies*, 267 Ga. App. 675, 681 (1) (601 SE2d 363) (2004); *Empire Distrib. v. George L. Smith II Ga. World Congress Center Auth.*, 235 Ga. App. 742, 746 (509 SE2d 650) (1998) (" 'Even after the introduction of parol evidence, there remains a conflict in the evidence as to the intent of the parties, and this disagreement is an evidentiary, factual matter for resolution by the jury and not a matter of law for determination by the court.' ").

[36] See *UniFund Financial*, supra.

[37] As the trial court's order only refers to one affidavit by Sheehan, it is possible that it was unaware of the second one.

drainage problems which would result due to surfaces being installed." However, as Sheehan's statement was offered to show Due West's intent at the time it executed the Agreement — and not to show the size of the lot or that Parcel A would have drainage problems — we find his qualifications or lack thereof irrelevant. Nevertheless, in view of our holding in Division 2 (b), the trial court's error in striking Sheehan's affidavit on this basis establishes no ground for reversal.

*Case No. A07A2252*

4. TSQ's cross-appeal regarding the trial court's denial of its motion for summary judgment as to TSQ's trespass claims is rendered moot by our decision in Division 2 (b).

5. TSQ also contends that the trial court erred in "failing to award attorney[ ] fees to TSQ pursuant to the Easement Agreement, because TSQ is a prevailing party in its defense of McGuire's claims for reimbursement." Our decision in Division 1 (c) renders this enumeration moot. Thus, we dismiss TSQ's cross-appeal.

*Judgment affirmed in part and reversed in part in Case No. A07A2251. Appeal dismissed in Case No. A07A2252. Blackburn, P. J., and Bernes, J., concur.*

DECIDED MARCH 26, 2008.

*Proctor Hutchins, Robert J. Proctor, Adam C. Caskey*, for appellant.

*Foltz Martin, Halsey G. Knapp, Jr., Jonathan E. Hawkins*, for appellee.